Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| IN RE: | CASE NO. 3:05-bk-31246 |
|---|---|
| RAYMOND GERALD MUSGRAVE and TWILA AHRETA MUSGRAVE, | CHAPTER 13 |
| Debtors. | JUDGE FRANK W. VOLK |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Debtors' Motion for Hardship Discharge (doc. 430), and the Chapter 13 Trustee's Response Thereto (doc. 431), along with the Chapter 13 Trustee's Motion to Dismiss Case (doc. 427). After hearing the Motions on October 5, 2016, the Court took the matters under advisement.

## I.

On October 13, 2005, the Musgraves filed their Chapter 13 Petition, and their Chapter 13 Plan was confirmed on October 14, 2011. The plan required a pay-in of $135,172.81, spread out over sixty months from confirmation, which would result in an estimated distribution of at least five percent, pro rata, to unsecured creditors. Monthly plan payments were $1,897 per month.

On June 17, 2016, the Chapter 13 Trustee filed a Motion to Dismiss Case for failure to make plan payments. The Debtors were delinquent in the amount of $4,742.50. A little less than a month later, and just days before the hearing on the Trustee's Motion to Dismiss, the Musgraves filed their Motion for Hardship Discharge. The Court continued the hearing on the

Trustee's Motion to Dismiss to the day that the Hardship Motion would be heard. The Trustee responded to the Hardship Motion on July 18, 2016 (doc. 431). After instruction from the Court, the Musgraves filed a Statement in Support of the Hardship Motion (doc. 441), as did the Trustee (doc. 443). The Musgraves also filed a response to the Trustee's Memorandum (doc. 444). The Court heard presentations from the Trustee and Counsel for the Musgraves on October 5, 2016. The matter is now ripe for adjudication

**II.**

**A.     Governing Standard**

To be eligible for a hardship discharge, a debtor must satisfy the requirements of 11 U.S.C. § 1328(b):

> [A]t any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
> (1)    the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2)    the value, as of the effective date of the plan, of the property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3)    modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). A debtor must satisfy all three conditions before the Court is authorized to grant a hardship discharge. *In re Bandilli*, 231 B.R. 836, 839 (1st Cir. B.A.P. 1999); *In re White*, 126 B.R. 542, 545 (Bankr. N.D. Ill. 1991); 7 Hon. William L. Norton Jr. & William L. Norton III,

*Norton Bankr. L. & Prac. 3d* § 153:4 (2016) ("The hardship discharge is available to a Chapter 13 debtor at any time after confirmation, but only if the three conditions described above are demonstrated by the debtor after notice and a hearing.") (footnotes omitted).

**B.     Section 1328(b)(1)**

The first condition under section 1328(b) is that, for reasons beyond the debtor's control, he or she could not complete plan payments. 11 U.S.C. § 1328(b)(1). This analysis "is necessarily fact-driven, with an emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *Bandilli*, 231 B.R. at 840; *see In re Bacon*, No. 02-40665, at *2 (Bankr. S.D. Ga. Aug. 20, 2003). Courts are split, however, on the level of severity of factual circumstances that will properly give rise to a hardship discharge. *See generally* Honorable W. Homer Drake, Jr., *et al.*, *Chapter 13 Practice & Procedure* § 21:8 (2nd ed. 2015); *In re Harrison*, No. 96-36511-T, 1999 WL 33114273, at *1-2 (Bankr. E.D. Va. Aug. 3, 1999). *Compare White*, 126 B.R. at 545 (limiting the application to "catastrophic circumstances" like the death of the debtor), *with Bandilli*, 231 B.R. at 839-40 (refusing "to read the word catastrophic into the statute": "Congress asked only that the Court determine whether the debtor is 'justly . . . accountable' for the plan's failure. The word 'accountable' is comparatively mild to the emotionally-laden term 'catastrophic.'").

Where courts have understood section 1328(b)(1) to require less than catastrophic circumstances to justify a debtor's failure to complete payments under a Chapter 13 plan, determining the foreseeability and substantiality of the changed circumstances is generally paramount. *See Bandilli*, 231 B.R. at 840; *In re Roberts*, 279 B.R. 396 (1st Cir. B.A.P. 2000), *aff'd*,

3

279 F.3d 91 (1st Cir. 2002); *Bacon*, No. 02-40665, at *2. In *Bacon*, for example, the court held that section 1328(b)(1) was satisfied where

(1) debtor [wa]s unable to complete payments under a Chapter 13 plan due to a change in circumstances for which debtor [wa]s not accountable,

(2) . . . the change was substantial in nature,

(3) [the change] was not foreseeable at the time of the confirmation of the plan, and

(4) debtor has made every effort to overcome such circumstances but is still unable to complete his plan payments.

*Bacon*, No. 02-40665, at *2. As to the substantiality of a change in circumstance, even termination of employment, standing alone, is insufficiently substantial to justify a hardship discharge. *See In re Easley*, 240 B.R. 563, 565 (Bankr. W.D. Mo. Sept. 10, 1999) (stating that, even in Courts that do not require a finding of catastrophic circumstances, "the loss of employment alone is not enough").

Where courts have understood section 1328(b) to require catastrophic circumstances, purely economic reasons are generally outside the parameters usually amounting to "the type of catastrophic events such as death or disability which prevent a debtor, through no fault of his or her own, from completing payments pursuant to a plan of reorganization." *See In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D. Ill. 1991) (noting that the debtor's loss of his truck, inability to find full time employment, and an unexpected expense of $1,118 are economic reasons and not, therefore, the types of reasons which would justify a hardship discharge); *see also In re Meek*, No. 10-02155-8-JRL, 2012 WL 1194109, at *7 (Bankr. E.D. Va. Feb. 24, 1997) ("[T]he granting of a hardship discharge is reserved for the most extreme and unusual of circumstances that prevent a debtor from completing payments under the plan, and not for purely economic reasons.").

Indeed, a debtor's death or permanent disability preventing the debtor from earning an income are the generally cited means by which section 1328(b) is satisfied by those courts that require catastrophic circumstances to justify a hardship discharge. *See e.g.*, *In re Bond*, 36 B.R. 49, 51-52 (Bankr. E.D. N.C. 1984) (death of the debtor considered grounds for hardship discharge); *cf. In re Cummins*, 266 B.R. 852, 857-58 (Bankr. N.D. Iowa 2001) (finding no grounds for hardship discharge where husband-debtor's injury kept him from work only for a time and wife-debtor's delivery of two children kept her from work); *In re Bandilli*, 218 B.R. 273, 275 (Bankr. D. R.I. 1998) (because the debtor's medical condition preexisted the case, she did not show sufficient circumstances for a hardship discharge), *aff'd*, *Bandilli*, 231 B.R. at 841.

In the instant case, both of the Musgraves suffer from grave illnesses. Mr. Musgrave suffers from Acute Sugar Diabetes and prostate cancer, and also suffered a stroke in the spring of 2016 which prevents him from driving, walking, and working. Mrs. Musgrave is afflicted with Macular Degeneration, Diverticulitis, and Irritable Bowel Syndrome. Both of the Musgraves require extensive, near – constant medical attention. Mr. Musgrave's doctor has advised him that he is not able to work. At the time of filing, Mr. Musgrave was a practicing attorney who was in private practice in Pt. Pleasant, West Virginia. During the pendency of the case, Mr. Musgrave transferred to the West Virginia Attorney General's Office.

The Chapter 13 Trustee argues that the Musgraves' medical conditions pre-dated their bankruptcy filing, and were therefore not unforeseen, as required by the statute. The case has been pending before this Court for more than eleven years, and declining health and the cessation of Mr. Musgrave's employment were foreseeable. The Court appreciates the Trustee's arguments. However, "declining health" and "age" do not encompass a completely debilitating stroke, which Mr. Musgrave suffered. As the sole breadwinner for the entirety of the bankruptcy case, and it

5

seems, the Musgraves' marriage, Mr. Musgrave's unexpected inability to work, and indeed live a normal life, due to a sudden and devastating health issue is enough to satisfy the first prong of 11 U.S.C. § 1328(b) under either approach.

C.    Section 1328(b)(2)

The second condition for a hardship discharge under section 1328(b) is that the debtor must satisfy a variation of the "Best Interests of Creditors" test. A debtor must show that the Trustee or the Chapter 13 debtor has distributed through the plan to unsecured creditors at least as much as they would have received had the estate been liquidated under Chapter 7 on the effective date on the plan. 11 U.S.C. § 1328(b)(2); *In re Thornton*, 21 B.R. 462, 464 (Bankr. W.D. Va. 1982). Specifically, the valuation date of the property distributed through the plan must be the effective date of the plan. *In re Dark*, 87 B.R. 497, 499 (Bankr. N.D. Ohio 1988).

As of today's date, the Musgraves have paid $123,790.81 into the case, and only $11,382 remains to meet the original gross base of the plan. The Trustee, in her supporting memorandum, noted that her "unaudited review" showed a distribution thus far to unsecured creditors of five percent. Doc. 443, pg. 2. The liquidation analysis of the Musgraves' confirmed plan showed that a Chapter 7 liquidation would result in a zero percent distribution to unsecured creditors. The Musgraves have shown that they have paid unsecured creditors more than they would have received in a liquidation, therefore satisfying this second prong of section 1328(b).

**D.** **Section 1328(b)(3)**

Finally, to receive a hardship discharge, a debtor prove that a modification of his or her Chapter 13 plan in accordance with 11 U.S.C. § 1329 is impracticable. 11 U.S.C. § 1328(b)(3). The debtor can meet this requirement by either showing that a proposed modification was not accepted by the holders of allowed secured claims, or that approval of the modification cannot be obtained for another reason. This Court notes that "[t]he Bankruptcy Code prefers modification of the plan as a solution to a debtor's problems and it should be attempted whenever it is feasible." *In re Bacon*, No. 02-40665, 2003 Bankr. LEXIS 2386, *6 (Bankr. S.D. Ga. Aug. 19, 2003) (citing *White*, 126 B.R. at 545). Courts have previously found that debtors who have little to no prospects for employment in the near future fulfill the requirements of section 1328(b)(3), as do debtors who have no source of regular income. *See, e.g., In re Mixson*, No. 11-81472-CRJ-13, 2016 Bankr. LEXIS 1674, *9 (Bankr. N.D. Ala. Apr. 14, 2016) (Where a debtor-wife had to care for two children under the age of two and had minimal employment prospects, and the debtor-husband and sole provider had been incarcerated, the debtor-wife was granted a hardship discharge) *and Bond*, 36 B.R. at 51.

In contrast, where debtors are in the "early stages" of their bankruptcy case, and they have not shown that there is no source of income to fund a modification of the plan, courts have found that they have not satisfied the third prong of section 1328. *See, e.g., Bacon*, 2003 Bankr. LEXIS 2386 at *7. Additionally, when there is room in a plan for a downward adjustment from a one hundred percent distribution to unsecured creditors, or when there is time to spread a plan out from thirty-six to sixty months, modification has not been found to be impracticable. *In re Schleppi*, 103 B.R. 901, 904 (Bankr. S.D. Ohio 1989) and *In re Starski*, No. 13-10067, 2014 Bankr. LEXIS 2171, * 4 (Bankr. N.D. Cal. May 15, 2014). And, when debtors'

"circumstances changed soon after confirmation but the debtor waited to request relief until it was too late to modify the plan," the third prong is not satisfied. *In re Cummins*, 266 B.R. 852, 856 (Bankr. N.D. Iowa 2001).

In the instant case, the Musgraves have provided conflicting information as to their current income. The mostly recently-filed Amended Schedule I (doc. 327, filed February 11, 2011) shows a "total monthly income" of $5,842, which includes $1,746 in Social Security. According to their 2014 tax return, the Musgraves' income for 2014 exceeded $93,000. The Musgraves' statement in support notes that they have "assets" of "Social Security & Retirement" in the amount of $2,397.63, and goes on to list the amount of their liabilities as $14,257.13. The Court presumes that those are monthly figures. Finally, the Musgraves' Response to the Trustee's Supporting Memorandum explains that the couple's "sole income at this point is the Social Security monthly benefit for both debtors (about $800.00)" and a state retirement benefit of "around $400.00 a month." Doc. 444, pg. 2 of 6.

The Trustee questions the amount of the Musgraves' medical expenses and the potential applicability of Medicare or supplemental health insurance, as well as the timing of the medical payments listed in the Musgraves' Statement in Support – are the amounts monthly, or accumulated debt, or the gross amount prior to insurance coverage? The Court takes note of the Trustee's skepticism and shares it, to an extent, as the Statement in Support is highly confusing and the assets and liabilities are not well explained. However, regardless of the exact figures, it is clear that the Musgraves suffer from several serious illnesses, that those illnesses require expensive medical care and prescription support, and the Musgraves cannot support both a plan payment and their medical expenses on their relatively meager income. Thus, the Court finds that the Musgraves have satisfied section 1328(b)(3).

8

**III.**

Based upon the foregoing discussion, it is, accordingly, **ORDERED** that the Musgraves' Motion for Hardship Discharge, be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Chapter 13 Trustee's Motion to Dismiss Case be, and is hereby **DENIED.**

The Clerk shall transmit a copy of this written opinion and order to the parties and their counsel, if any, and the United States Trustee.